***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hoag and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby REVERSES the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. It is stipulated that the plaintiff sustained injuries by accident arising out of and in the course of her employment with the defendant-employer on April 24, 1998 (I.C. No. 846590) and May 20, 1999 (I.C. No. 940150). Defendants field Form 60s with the Commission admitting the compensability of these injuries by accident.
4. Insurance Company of the State of Pennsylvania was the carrier on risk on April 24, 1998 and America Home Assurance was the carrier on risk on May 20, 1999.
5. Plaintiff's average weekly wage on April 24, 1998 was $261.42 yielding a compensation rate of $174.29.
6. Plaintiff's average weekly wage on May 20, 1999 was $273.80 yielding a compensation rate of $182.55.
7. Plaintiff underwent a lumbar decompression at L5-S1 on June 8, 1998 and following this surgery, plaintiff received a 5% permanent partial disability rating for her low back from Dr. Robin F. Koeleveld.
8. Plaintiff underwent an independent medical evaluation with Dr. T. Craig Derian on February 10, 2000 who assigned her a 15% permanent partial disability rating to her back and a 20% permanent partial disability to her left leg.
9. Plaintiff returned to work with defendant-employer on August 30, 1998 following her April 24, 1998 injury and on August 22, 1999 following her May 20, 1999 injury.
10. The parties stipulated that plaintiff's medical records be entered into the evidence of record as Stipulated Exhibit 1 at the hearing before the Deputy Commissioner.
11. Former Deputy Commissioner Jones by Order dated April 4, 2002 excluded the deposition of Theresa Kubicki, P.A. from the evidence of record. Commissioner Thomas J. Bolch issued an Order for the Full Commission on March 25, 2003 including the deposition of Ms. Kubicki in the evidence of record.
12. The depositions and records of Dr. T. Craig Derian, Dr. Edward Kolar, Dr. Robin Koeleveld, Dr. James E. Nutt, Dr. Regina Ryan and Theresa Kubicki, P.A., are a part of the evidence of record.
13. The issues before the Commission are whether plaintiff is totally disabled as result of her admittedly compensable back injury, what is plaintiff's permanent partial disability rating, and what additional compensation, if any, is plaintiff due.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff whose date of birth is Mary 29, 2950, is a high school graduate with a nurses' aid degree. She began working for defendant-employer in 1996 and was a third shift coordinator in the shoe department.
2. Plaintiff sustained a compensable injury by accident arising out of her employment with defendants on April 24, 1998 when she fell off a step stool. Plaintiff experienced low back pain as result of her compensable injury by accident. An MRI revealed a herniated disc at L5-S1.
3. Dr. Robin Koeleveld, a neurosurgeon, performed a L5-S1 laminectomy and removal of a herniated disc on June 8, 1998.
4. Dr. Koeleveld released plaintiff to return to work for defendant-employer with permanent restrictions of no lifting over 40 pounds. Dr. Koeleveld also assigned a 5% percent permanent partial disability rating to plaintiff's back. Dr. Koeleveld testified that as of the taking of his deposition on March 5, 2002, he would assign plaintiff a permanent partial disability rating of 5-10 % to her spine.
5. On May 20, 1999, plaintiff sustained another injury by accident when she slipped on hair spray as she was walking down an aisle at work. Plaintiff experienced pain in her left shoulder, neck, low back, and right hip.
6. Plaintiff was seen by Dr. Regina Ryan, a family practitioner with Smithfield Family Practice for her injuries from the fall on May 20, 1999. Dr. Ryan felt that plaintiff had exacerbated her chronic radiculitis symptoms in the lumbar spine and had a lumbar sprain.
7. Dr. Ryan released plaintiff to return to work with restriction of no lifting greater than 15 pounds from May 20, 1999 through May 27, 1999. When plaintiff did not improve, Dr. Ryan ordered physical therapy for plaintiff.
8. Dr. Ryan treated plaintiff on June 30, 1999. Though plaintiff's shoulder had improved, she had developed chronic left low back pain which radiated down her left leg and plaintiff reported pain in her right arm. No work restrictions were documented for plaintiff on this visit, and plaintiff reported she had returned to work on the June 23, 1999.
9. Plaintiff was treated by Dr. Ryan on August 17, 1999. Dr. Ryan assigned light duty work restrictions of no overhead lifting, and no lifting more than 10 pounds.
10. Dr. Ryan felt plaintiff had reached maximum medical improvement and released her on September 30, 1999.
11. Plaintiff was involved in an automobile accident on September 14, 1999. As a result of this accident, plaintiff complained of pain in her spine.
12. Plaintiff was treated for the symptoms resulting from the automobile accident at Kaiser Permanente on October 6, 1999.
13. On November 10, 1999, plaintiff underwent a chest evaluation with Dr. James E. Nutt, cardiologist, for an assessment of coronary artery disease. Dr. Nutt determined that there was poor blood supply to plaintiff's heart and recommended a heart catheterization.
14. On November 12, 1999, plaintiff underwent a heart catheterization that showed non-focal plaquing of the coronary arteries and normal pumping ability. Plaintiff was referred back to her treating physician for medical treatment.
15. On February 10, 2000, plaintiff underwent an independent medical examination for low back problems with Dr. T. Craig Derian, an orthopedic surgeon. Dr. Derian determined that without further intervention such as a spine fusion plaintiff had a 15% percent permanent partial disability rating to her back and a 20% permanent partial disability rating to her leg. Dr. Derian stated that the 5% impairment rating by Dr. Koeleveld was very low following lumbar decompression surgery with persistent symptoms and significant impairment.
16. Based upon the postoperative MRI, Dr. Derian found plaintiff had a large posterior annular tear which could have resulted in back and neck pain. Dr. Derian stated he did not believe plaintiff was malingering and that she had genuine weakness.
17. Dr. Derian attributed plaintiff's lumbar disc herniation at L5-S1 to her compensable injury. Dr. Derian felt plaintiff was unlikely to improve without a lumbar decompression, stabilization and spinal fusion at L5-S1.
18. Dr. Derian felt plaintiff could return to work with restrictions of no lifting greater than 10 pounds, frequent position changes while at work, avoiding repetitive bending, stooping, and lifting.
19. Dr. Derian was unaware of the plaintiff being in an automobile accident in September 1999 and was unable to give an opinion about whether the accident contributed to plaintiff's permanent functional impairment.
20. Plaintiff was treated during 2000 for high blood pressure management, elevated cholesterol and cardiac risk factors.
21. Plaintiff's testimony at the Deputy Commissioner hearing, which is accepted as credible by the Commission, indicated that she continued to work for defendant-employer but had constant back pain and used a TENS unit 24 hours a day. In addition, her left leg was numb from knee to ankle and she bad difficulty sleeping.
22. On January 10, 2001, plaintiff returned to Dr. Nutt with complaints of recurring chest discomfort which Dr. Nutt described as being atypical or non-exertional. Dr. Nutt attempted to treat plaintiff's symptoms with medication.
23. On January 30, 2001, plaintiff was seen by Theresa Kubicki, a physician's assistant at Preston Medical Associates, for high blood pressure and significant pain. Ms. Kubicki had treated plaintiff for a number of years as her primary care provider and was very familiar with plaintiff's condition. At previous visits, Ms. Kubicki had recommended that plaintiff stop working due to her back pain, but plaintiff wanted to work to help support her family.
24. As a physician's assistant, Ms. Kubicki saw patients, wrote prescriptions and could perform a number of different medical procedures under the supervision of a physician. Dr. Edward Kolar supervised Ms. Kubicki's work during the time she treated plaintiff. Dr. Kolar reviewed and signed off on Ms. Kubicki's treatment of patients within 24-48 hours of her seeing patients.
25. Ms. Kubicki testified that plaintiff was unable to continue to work because of the amount of pain she was having and that this pain resulted from the compensable injuries by accident. Ms. Kubicki indicated plaintiff should be out of work for the month of February 2001 as the result of high blood pressure, headaches and chronic back pain and felt plaintiff had permanent disability resulting from her back injuries.
26. Ms. Kubicki recommended on January 30, 2001 that plaintiff stay out of work. She directed her to see the physicians who were treating her for her workers' compensation claim. Ms. Kubicki noted plaintiff was taking daily narcotics and felt she should not be working due to her back problems.
27. Dr. Kolar had seen plaintiff on two occasions. He felt Ms. Kubicki's treatment plaint was reasonable and appropriate. Dr. Kolar testified in his medical opinion Ms. Kubicki's recommendation to take plaintiff out of work on January 30, 2001 was not only reasonable but was good medical judgment.
28. Dr. Kolar stated that his practice had not treated plaintiff for her workers' compensation injury but felt there were several high risk factors for plaintiff. He felt her high blood pressure, her elevated cholesterol, and smoking all created risks to her. Dr. Kolar felt Ms. Kubicki was in the best position to evaluate plaintiff because of her through knowledge of plaintiff's medical condition.
29. Based upon Ms. Kubicki's instructions, plaintiff continued working for defendant-employer but gave a two-week notice before taking a leave of absence. On the last day of the two-week period, plaintiff experienced difficulties including shortness of breath and chest pain.
30. Plaintiff was taken to Johnston Memorial Hospital emergency room with complaints of chest pain, dizziness and nausea.
31. On February 5, 2001, plaintiff was seen at Rex Healthcare emergency room where she was evaluated by Dr. Nutt and underwent a second cardiac catheterization. This catheterization indicated stenosis of three coronary arteries greater than 50% which Dr. Nutt felt were interfering with blood flow to the heart.
32. Dr. Nutt determined there was a focal narrowing on the top of the diffused narrowing that was previously found and referred plaintiff to Dr. Robaczewski for triple bypass surgery on February 19, 2001.
33. Following the bypass surgery, plaintiff's cardiac condition improved. Dr. Nutt, at plaintiff's insistence that she wanted to return to work, released plaintiff to part-time work on June 18, 2001. However, due to her continued back pain, plaintiff did not return to work.
34. In her deposition testimony Ms. Kubicki stated that due to plaintiff's continued chronic back pain she was not able to return to work after her release to part-time work by the cardiologist.
35. Plaintiff began to have chest discomfort again and on October 15, 2001 plaintiff returned to Dr. Nutt with complaints of shortness of breath, fainting, and chest pain. Plaintiff had not returned to work as of October 15, 2001. Dr. Nutt stated that plaintiff could not drive and was experiencing depression. Dr. Nutt indicated that plaintiff's cardiac condition was fairly stable, but that she had to remain on medicine for high cholesterol and blood pressure. Dr. Nutt described plaintiff's prognosis as follows: "Well, overall, probably not that good. The problem is that she has small, diffusely involved arteries. She may already be symptomatic again." Dr. Nutt also described plaintiff as a "thin, somewhat chronically ill-appearing woman."
36. Plaintiff has not returned to work or looked for employment since her last day of work on February 1, 2001. Plaintiff has work restrictions of no lifting, pushing, pulling or twisting and no overhead work with her hands. According to plaintiff's testimony, which is deemed credible, she is in constant pain, is unable to sleep or bend and cannot stand or sit for prolonged periods of time. The Commission therefore finds by the greater weight of the evidence that after February 1, 2001 plaintiff was disabled from any employment as a result of her compensable injuries.
37. It appears that plaintiff would benefit from a further orthopedic assessment and a pain management program, as recommended by Ms. Kubicki.
38. Plaintiff has not proved by the greater weight of the medical evidence that there is a causal relationship between plaintiff's compensable injuries and her heart condition or high blood pressure.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained compensable injuries to her back on April 24, 1998 and on May 20, 1999 arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Defendants admitted compensability of plaintiff's injuries by accident by filing Form 60s. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v.Charmes/Arby's Roast Beef 142 N.C. App. 154,542 S.E.2d 277, disc. Rev. denied, 353 N.C. 729,550 S.E.2d 782 (2001).
3. In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of proof by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages.Demery v. Perdue Farms, Inc., 143 N.C. App. 259,545 S.E.2d 485, aff'd per curiam, 354 N.C. 355,554 S.E.2d 337 (2001); Russell v. Lowes ProductDistribution, 108 N.C. App. 762,425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc.,supra.
4. In the case at bar, plaintiff has proved by the greater weight of the evidence, including the medical testimony of Drs. Derian, Nutt and Kolar and Ms. Kubicki, as well as the testimony of plaintiff, that as the result of the compensable injuries she is physically incapable of work in any employment due to her chronic back pain. Defendants have not produced any evidence that suitable jobs are available for plaintiff and that she is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demeryv. Perdue Farms, Inc., supra.
5. As the result of her compensable injuries by accident, plaintiff is disabled from any employment and is entitled to receive total disability compensation at the rate of $182.55 per week beginning February 2, 2001 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to have defendants provide medical treatment arising from her compensable injuries by accidents. N.C. Gen. Stat. § 97-25. In addition, plaintiff would benefit from a pain management program and from further evaluation by an orthopedic surgeon to determine whether surgical intervention is necessary.
7. Plaintiff has failed to prove by the greater weight of the evidence that her cardiac problems and high blood pressure are causally related to her compensable injuries by accidents, and, therefore, she is not entitled to payment by defendants for this treatment. N.C. Gen. Stat. § 97-2(6); Click v. Freight Carriers,41 N.C. App. 458, 255 S.E.2d 192 (1979).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Commission enters the following:
 AWARD
1. Defendants shall pay total disability compensation arising from plaintiff's compensable injuries by accident at a rate of $182.55 per week beginning February 2, 2001 and continuing until further Order of the Commission. Said amounts that have accrued shall be paid in a lump sum, subject to an attorney's fee approved below.
2. Defendants shall pay all medical expenses resulting from plaintiff's compensable injuries by accident on April 24, 1998 and May 20, 1999.
3. The approved medical expenses include further evaluation of plaintiff by an orthopedic surgeon and referral to a pain management clinic. This matter is hereby REFERRED to the Nurses' Section of the Commission for the assignment of a Commission nurse to assist the parties in the selection of these medical providers. In the event the parties are unable to agree on this medical treatment, the parties shall contact Commissioner Mavretic for authorization of appropriate medical providers.
4. A reasonable attorney's fee of 25% of compensation due plaintiff under Paragraph I of this AWARD is approved for plaintiff's counsel and shall be deducted from that sum and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs.
This the 23rd day of April 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING WITHOUT WRITTEN OPINION:
 S/_______________ DIANNE C. SELLERS COMMISSIONER